**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSSEP STEVEN LOZANO CASTANO, <br><br> Petitioner, <br><br> v. <br><br> WARDEN, CHRISTOPHER LAROSE, <br><br> Respondent. | Case No.:  3:26-cv-01747-RBM-VET <br><br> **ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS** <br><br> **[Doc. 6]** |

Pending before the Court is Petitioner Jossep Steven Lozano Castano's ("Petitioner") Amended Petition for Writ of Habeas Corpus ("Amended Petition") pursuant to 28 U.S.C. § 2241.  (Doc. 6.)  For the reasons set forth below, the Amended Petition is **GRANTED**.

## I.    BACKGROUND

Petitioner, a native of Columbia, entered the United States on July 28, 2024 seeking asylum.  (Doc. 1 at 6; Doc. 6 at 2.)  Petitioner was detained by United States Immigration and Customs Enforcement ("ICE") for about two months and then released from custody on September 7, 2024, pursuant to humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).  (Doc. 1 at 6; Doc. 6 at 2, 6.)

After his release, Petitioner "married a United States [c]itizen, applied for

adjustment of status, and worked in landscaping." (Doc. 6 at 2.)  Petitioner also applied for asylum in August 2024, and his application remains pending.  (*Id.* at 3.)  "Hecomplied with all requirements of his release," including attending all required check-ins with ICE, and "attended all of his immigration court hearings." (*Id.*; Doc. 1 at 6.)

"On January 27, 2026, [Petitioner] reported to his ICE check-in in New York and he was re-detained by ICE without proper notice or opportunity to contest his detention." (Doc. 6 at 2.)  Petitioner continues to be detained at the Otay Mesa Detention Center.  (*Id.* at 3.)   About 10 days prior to his detention, Petitioner had back surgery.   Despite Petitioner's recent surgery, he was required to sleep on the floor for three nights [and was] only given aspirin for his pain." (*Id.*)

On March 19, 2026, Petitioner, proceeding *pro se*, commenced this action by filing a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241.  (Doc. 1.)  Petitioner also requested that "a public defender [ ] be assigned to this case . . . ." (*Id.* at 7.)  On March 23, 2026, the Court issued an order referring the Petition to the Federal Defenders of San Diego, Inc. for an evaluation of whether Petitioner is eligible for appointment of counsel. (Doc. 2.)  On April 8, 2026, Petitioner, by and through counsel, filed the Amended Petition. (Doc. 6.)[1]  Pursuant to this Court's order (*see* Doc. 7), Respondents filed a Response to the Petition ("Response") on April 30, 2026.  (Doc. 8.)  Petitioner filed a Traverse on May 1, 2026.  (Doc. 9.)

## II.   <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that

---

[1]  A petitioner may amend his habeas petition once as a matter of course within 21 days after serving it.  *See* Fed. R. Civ. P. 15(a)(1)(A); *In re Morris*, 363 F.3d 891, 893 (9th Cir. 2004) ("Rule 15(a) applies to habeas corpus actions with the same force that it applies to garden-variety civil cases.").

3:26-cv-01747-RBM-VET

custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

### III.    <u>DISCUSSION</u>

Petitioner claims he was re-detained in violation of the Administrative Procedures Act and the Fifth Amendment's Due Process Clause. (Doc. 6 at 3–13.) Respondents assert that "Petitioner was previously released from immigration custody on parole issued under 8 U.S.C. § 1182(d)(5) . . . [but they] have insufficient information regarding termination of that parole, pursuant to 8 C.F.R. § 212.5(e)(2), to provide to the Court." (Doc. 8 at 2.) Respondents nonetheless maintain that "Petitioner is subject to mandatory detention under § 1225(b)(2)" but "acknowledge[ ] that this Court, and Courts in this District, have repeatedly reached the opposite conclusion under the same and/or similar facts" and "on that basis . . . do[ ] not oppose the [P]etition." (*Id*. at 2–3.)

This Court has granted several habeas petitions filed by similarly situated petitioners who were released from ICE detention on humanitarian parole under 8 U.S.C. § 1182(d)(5) and later re-detained. For example, in *Perez v. LaRose*, the Court applied the due process inquiry in *Mathews v. Eldridge*, 424 U.S. 319 (1976) and found "all three factors support a finding that Respondents' revocation of [p]etitioner's parole [§ 1182(d)(5)(A)] without reasoning or an opportunity to be heard deprived [p]etitioner of his due process rights." Case No.: 3:25-cv-02620-RBM-JLB, 2025 WL 3171742, at *5 (S.D. Cal. Nov. 13, 2025). The Court concluded that the revocation of the petitioner's parole violated the Due Process Clause and rendered his detention unlawful. *Perez*, 2025 WL 3171742, at *5.

The Court reached the same conclusion in *Velazquez-Chinga v. Noem*, finding the revocation of the petitioner's parole without an individualized determination or an opportunity to be heard "was neither consistent with 8 U.S.C. § 1182(d)(5)(A) nor the

3:26-cv-01747-RBM-VET

demands of due process."  Case No.: 3:26-cv-00105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026) (citing *Araujo*, 2025 WL 3278016, at *2.)  As the Court noted, "[d]ue process for parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination."  *Id.* (quoting *Araujo v. LaRose*, No. 25cv2942-BTM-MMP, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025)); *see Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164–66 (S.D. Cal. 2025) (analyzing *Mathews* factors).

Like in *Perez* and *Velasquez-Chinga*, Petitioner was apprehended upon his arrival to the United States and released from his initial detention on parole pursuant to 8 U.S.C. § 1182 (d)(5).  (*See* Doc. 6 at 6.)  "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017); *see Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("As ICE was not authorized to release [Petitioner] if [he] was a danger to the community or a flight risk, the Court must infer from [Petitioner's] release that ICE determined [he] was neither.").  Indeed, the applicable regulations authorize ICE to release a noncitizen from custody for humanitarian reasons only if the noncitizen "present[s] neither a security risk nor a risk of absconding."  8 C.F.R. § 212.5(b).

Before he was re-detained in January 2026, Petitioner lived in the United States for over a year, was able to apply for asylum relief, maintained employment, and complied with the conditions of his release. (Doc. 6 at 2.)  In fact, Petitioner was re-detained while attending his ICE check-in, as required by the conditions of his release on parole.  (*Id.*)  Respondents therefore implicitly promised Petitioner's continued release, and he reasonably relied on that promise. *See Pinchi*, 792 F. Supp. 3d at 1034 (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).  "Since DHS's initial determination that Petitioner should be paroled because [he] posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed." *Salazar v. Casey*, Case No.: 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025).  Petitioner also

3:26-cv-01747-RBM-VET

alleges, and Respondents do not dispute, that he "was re-detained by ICE without proper notice or opportunity to contest his detention." (Doc. 6 at 2.)

The Court therefore adopts its reasoning in *Perez* and *Velasquez-Chinga* applies it here. For those same reasons, Respondents' revocation of Petitioner's release on parole under 8 U.S.C. § 1182(d)(5)(A) and his subsequent re-detention without a pre-deprivation or bond hearing violated the Due Process Clause of the Fifth Amendment and rendered his detention unlawful.[2]

## IV.   CONCLUSION

Based on the foregoing reasons, the Amended Petition (Doc. 6) is **GRANTED**. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting parole.

2. Respondents **MAY NOT** re-detain Petitioner without compliance with 8 C.F.R. § 212.5, 8 U.S.C. § 1182(d)(5)(A), and the Due Process Clause.

3. The Court **ORDERS** that, prior to any such re-detention, Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before an immigration judge to determine whether detention is warranted. Respondents **SHALL** bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.

**IT IS SO ORDERED**.

DATE: May 1, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[2] In light of the disposition herein, the Court declines to address the Petition's remaining grounds for relief.

3:26-cv-01747-RBM-VET